[Cite as *Lamancusa v. Webb*, 2026-Ohio-229.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| SAM LAMANCUSA, TREASURER TRUMBULL COUNTY, OHIO, | **CASE NO. 2024-T-0080** |
| Plaintiff-Appellee, | Civil Appeal from the Court of Common Pleas |
| - vs - | |
| LESLIE C. WEBB, | Trial Court No. 2022 CV 00157 |
| Defendant, | |
| UNKNOWN SPOUSE, HEIRS, NEXT OF KIN AND ADMINISTRATORS OF LESLIE C. WEBB, et al., | |
| Defendant-Appellant. | |

## OPINION AND JUDGMENT ENTRY

Decided: January 27, 2026
Judgment: Reversed and remanded

*Dennis Watkins*, Trumbull County Prosecutor, and *Lynn B. Griffith, III*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Michael J. Fredericka*, Neuman and Fredericka Law Office, L.L.C., 761 North Cedar Avenue, Suite 1, Niles, OH 44446 (For Defendant-Appellant).


SCOTT LYNCH, J.

{¶1} Appellant, Heather Zeena (unknown heir and next of kin of Leslie C. Webb), appeals the judgment of the Trumbull County Court of Common Pleas, denying her Motion to Vacate Judgment. Because the Motion was denied without hearing, we reverse

the decision of the court below and remand for further proceedings consistent with this Opinion.

{¶2} While the dissenting opinion raises what would be, in other situations, valid concerns regarding Zeena's apparent inaction and the forfeiture of her right to contest the foreclosure, in the present case, she was denied a fair opportunity of doing so in the first place. Zeena claims she did not receive service of the foreclosure and, when she attempted to challenge the validity of service through her Motion to Vacate, was denied a hearing on the merits of her claim. *See Lundeen v. Turner*, 2021-Ohio-1533, ¶ 18 ("to the extent that a failure of service deprives a trial court of jurisdiction to proceed, even a defendant with no actual notice of the pending action may obtain relief directly from the trial court by petitioning the trial court to vacate the judgment on the ground that she was not properly served"). Inasmuch as Zeena's grounds for vacating the judgment stem from a failure of service, her conduct does not suggest waiver or forfeiture. *Compare State v. Payne*, 2007-Ohio-4642, ¶ 23 ("[w]aiver is the intentional relinquishment or abandonment of a right" but "forfeiture is a failure to preserve an objection").

***Substantive and Procedural History***

{¶3} On February 7, 2022, plaintiff-appellee, Sam Lamancusa, acting in his capacity as the treasurer of Trumbull County, filed a Complaint (Foreclosure of Lien for Delinquent Land Taxes) against Leslie C. Webb (owner of the subject property); the Unknown Spouse, Heirs, Next of Kin and Administrators of Leslie C. Webb; and Unknown Tenants at 8700 Delin Thomas Road, Kinsman, Ohio 44428. Lamancusa sought to foreclose the subject property to recover delinquent property taxes, penalties, and interest in the amount of $18,097.49.

{¶4} On March 31, 2022, Lamancusa filed an Affidavit for Service by Publication (Landbank), averring as follows:

> Darlene Sudol, being first duly sworn, says that she is the Secretary for the Attorney of the Treasurer's Office, Trumbull County, Ohio; that the usual place of residence of the Defendants **Leslie C. Webb and Unknown Spouse, Heirs[,] Next of Kin and Administrators of Leslie C. Webb**, cannot with reasonable diligence, (for reason certified mail returned by postmaster for attempt not known and unable to forward, local telephone directory, Warren/Youngstown Regional Telephone Book, Public records through the Internet & Intranet) be ascertained, and service of summons cannot be made within the State of Ohio upon the Defendants sought to be served, and that the Affiant has personal knowledge of the facts stated herein.

{¶5} On March 29, April 5 and 12, 2022, service was effected upon the defendants identified in the affidavit by publication in *The Trumbull County Legal News*.

{¶6} On June 14, 2022, Lamancusa moved for default judgment.

{¶7} On August 5, 2022, the trial court ordered the foreclosure and sale of the property. Subsequently, the subject property was appraised at $180,000. The court determined the total amount due on the subject property, including current and estimated taxes and costs, to be $26,283.35. The sheriff was ordered to advertise and sell the subject property in accordance with R.C. 5721.19 and 5722.03. Notice was duly issued that "sale of the parcel would be public, for cash, and would be sold to the highest bidder with a bid sufficient to satisfy the 'Minimum Bid' of two-thirds (2/3) of the appraised value of said premises, in the minimum amount of $120,000.00."

{¶8} Public sales were held on December 1 and 15, 2022. No bids were received at either sale.

{¶9} On January 17, 2023, Lamancusa moved for an order of confirmation of sale and an order "that the subject property be transferred directly to Trumbull County

Case No. 2024-T-0080

Land Reutilization Corporation, in accordance with R.C. 5721.19 and 5722.03." The trial court issued the requested orders on the same date.

{¶10} On August 5, 2024, Zeena filed a Motion to Vacate on the following grounds: The named defendant, Leslie C. Webb, died on September 25, 2017. As a judgment cannot be taken against a deceased party, the foreclosure was improper. Secondly, as the value of the property was significantly greater than the amount of delinquent tax liability, the transfer of the subject property to the land bank constituted a taking without just compensation. Finally, neither the filing of the action nor decree of foreclosure was served upon Webb's next of kin. Zeena sought "to vacate [the] judgment, apply as a fiduciary of the estate of her late father, Leslie C. Webb, sell the property, and distribute the proceeds to the next of kin of Leslie C. Webb after paying the back taxes upon sale."

{¶11} On September 4, 2024, the trial court denied the Motion to Vacate. The court found: "The estate of Leslie C. Webb was a necessary party in the foreclosure action. They [sic] were, in fact, listed and served." The court also found that the "motion fails to demonstrate with any facts or evidentiary material reasons she should be entitled to relief; rather, the motion merely makes bare allegations of entitlement to relief."

### *Assignments of Error*

{¶12} On October 4, 2024, Zeena filed a Notice of Appeal. On appeal, she raises the following assignments of error:

{¶13} "[1.] The Court erred in ruling that proper service was made on the parties at interest, specifically the Estate of Leslie C. Webb was properly served."

{¶14} "[2.] The Court erred in allowing service by publication, as reasonable diligence by the Plaintiff had not been specifically shown, or was under false pretenses."

{¶15}  "[3.] The Court erred in not vacating the judgment or holding a hearing when a constitutional issue of a taking was alleged in the Motion to Vacate."

***Motion to Vacate; Standard of Review***

{¶16}  It is well-established that "[a] default judgment is void if service on the parties is not proper."  *McCullough Builders, Inc. v. Waterfield Fin. Corp.*, 2003-Ohio-1583, ¶ 14 (11th Dist.); *Tambe v. Montgomery*, 2024-Ohio-2857, ¶ 12 (12th Dist.). Accordingly, "a defendant's motion to vacate a judgment for improper service need not satisfy the requirements of Civ.R. 60(B)." *McCullough Builders* at ¶ 14; *Corrao v. Bennett*, 2020-Ohio-2822, ¶ 16 (8th Dist.) ("a party who asserts improper service does not need to meet the requirements of Civ.R. 60(B) because a default judgment rendered by a court without obtaining proper service over the defendant is void and the defendant is entitled to vacation of the judgment").  "When a judgment is challenged on the basis that the trial court lacked jurisdiction for failure of service, the proper course for the trial court to take is to hold a hearing on the motion."  *Huntington Natl. Bank v. Dixon*, 2008-Ohio-5250, ¶ 18 (8th Dist.).

{¶17}  "[T]he abuse of discretion standard applies when reviewing a trial court's decision on a motion to vacate a void judgment for lack of personal jurisdiction where the question is whether reasonable diligence was exercised before service by publication." *Franks v. Reynolds*, 2021-Ohio-3247, ¶ 39 (7th Dist.); *Malaj v. Abeid*, 2024-Ohio-2256, ¶ 34 (8th Dist.).

***Service by Publication***

{¶18}  Service by publication is statutorily authorized "[w]hen it appears by affidavit that the name and residence of a necessary party are unknown to the plaintiff."  R.C.

2703.24; *Fletcher v. First Natl. Bank of Zanesville*, 167 Ohio St. 211, 214 (1958) (R.C. 2703.24 authorizes "the usual procedure of obtaining service by publication on the decedent's 'unknown heirs'"). "Before service by publication can be made, an affidavit of the party requesting service or that party's counsel shall be filed with the court. The affidavit shall aver that service of summons cannot be made because the residence of the party to be served is unknown to the affiant, all of the efforts made on behalf of the party to ascertain the residence of the party to be served, and that the residence of the party to be served cannot be ascertained with reasonable diligence." Civ.R. 4.4(A)(1).

{¶19} "[R]easonable diligence requires taking steps which an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address." *In re Thompkins*, 2007-Ohio-5238, ¶ 25, citing *Sizemore v. Smith*, 6 Ohio St.3d 330, 332 (1983). "'[W]hat constitutes reasonable diligence will depend on the facts and circumstances of each particular case.'" *Id.*, citing *Sizemore* at 332.

{¶20} With respect to service, it is well-established that service by publication is a method of "last resort" that requires "strict compliance" with the requirements of Civil Rule 4.4(A). *Anstaett v. Benjamin*, 2002-Ohio-7339, ¶ 15 (1st Dist.); *Patrick v. Ellman*, 2020-Ohio-3312, ¶ 18 (12th Dist.). "Filing an affidavit with averments that comply with Civ.R. 4.4(A)(1) 'gives rise to a rebuttable presumption that reasonable diligence was exercised.'" *State v. Arroyo-Garcia*, 2025-Ohio-913, ¶ 27 (10th Dist.), citing *Sizemore* at 331. "The averments in the affidavit, however, are not conclusive." *Id.* "When 'challenged' by the defendant, the plaintiff 'must support the fact that he or she used reasonable diligence.'" *Id.*, citing *Sizemore* at 332. Where there is a "deficiency of service by publication to provide actual notice of pending litigation, due process demands that a

party requesting service demonstrate the exercise of diligence in discovering the name and residence of a party to be served as a necessary predicate to service by publication." *Patrick* at ¶ 24.

{¶21} We reiterate that, as grounds for vacating the default judgment, Zeena argued in her Motion to Vacate a failure of service, i.e., she neither received the Complaint nor the Decree of Foreclosure, and that service by publication "would not have been sufficient being out of state." This is sufficient to challenge the entry of default judgment. Without proper service of process, a court lacks jurisdiction to enter a judgment against a party. The dissenting opinion would have Zeena forfeit her right to challenge the underlying judgment because she did not specifically challenge the sufficiency of the affidavit in support of service by publication. *Infra* at ¶ 43. For purposes of vacating the default judgment, it is enough to allege the failure of service. Regardless of why Zeena believes she failed to receive service, it is "due process" which "requires the method of service to be 'reasonably calculated' to inform the interested party of the pending action." *Lacy v. State*, 2020-Ohio-3089, ¶ 87 (11th Dist.).

{¶22} The dissenting opinion would further deny Zeena relief on the grounds that the affidavit in support of service by publication "necessarily meets the criteria of Civ.R. 4.4." *Infra* at ¶ 48. The deficiencies of the affidavit are discussed below. For present purposes, even if the affidavit satisfied the criteria of Civil Rule 4.4, it would only create a rebuttable presumption of proper service. *Lacy* at ¶ 87 ("[a] presumption of proper service exists when the record reflects that the civil rules pertaining to service of process have been followed"). The dissenting opinion, however, would treat this rebuttable presumption as conclusive with respect to sufficiency of service and so deny Zeena the

Case No. 2024-T-0080

opportunity of challenging service. This is contrary to the authorities cited both above and below. *Arroyo-Garcia* at ¶ 27; *Patrick* at ¶ 24.

{¶23} Finally, we are fully cognizant of the principle of appellate procedure that review should be "limited to the issues *actually raised and litigated* in the trial court." *Infra* at ¶ 42. The import of our decision is that Zeena did not have the opportunity to raise and litigate any issues relating to the foreclosure, rather than what the relative merit or lack of merit of whatever those issues may be. She asserts that she did not receive notice of the foreclosure. If so, she certainly did not have the opportunity to raise issues.

{¶24} Moreover, the trial court denied her even the opportunity of challenging notice (as explained below, there is only a presumption of valid service) and did so for improper reasons. The court stated that Zeena failed "to demonstrate with any facts or evidentiary material reasons she should be entitled to relief." However, "a movant's burden is only to allege a meritorious defense, not to prove that he will prevail on that defense." *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20 (1988). Furthermore, "[i]t is true that neither Civ.R. 60(B) itself nor any decision from this court has required the movant to submit evidence, in the form of affidavits or otherwise, in support of the motion, although such evidence is certainly advisable in most cases." *Id.* at 20-21. Accordingly, it was improper to deny Zeena's Motion because it was not supported by evidentiary materials.

{¶25} The trial court also makes the erroneous claim that "the estate of Leslie C. Webb was …, in fact, listed and served." This will be discussed more fully below. For the present, it is enough that Zeena did not have the opportunity to challenge service (for

Case No. 2024-T-0080

specious reasons), and, therefore, did not have the opportunity to challenge the foreclosure on the merits.

***First and Second Assignments of Error: the Trial Court Abused its Discretion by Denying the Motion to Vacate***

{¶26} In her first two assignments of error, Zeena argues that service by publication in the present case was improper. Whether the unknown heirs of Leslie C. Webb were properly serviced by publication is not for this court to decide on appeal in the first instance. However, the trial court did err and abuse its discretion by denying the Motion to Vacate so that Lamancusa was not required to demonstrate the exercise of reasonable diligence in discovering the identity of the unknown heirs. Additionally, the trial court erred by finding that the non-existent estate of Leslie C. Webb was properly served.

{¶27} As explained above, the affidavit submitted by Lamancusa in support of service by publication only created a rebuttable presumption that reasonable diligence was exercised in ascertaining the residence of the unknown heirs. Since publication failed to provide actual service, the trial court should have granted the Motion to Vacate. The affidavit filed by the Secretary for the Attorney of the Treasurer's Office in the present case does not, on its face, demonstrate the exercise of reasonable diligence to locate Webb, his spouse, heirs, next of kin, and/or administrators of his estate. The affidavit describes the "reasonable diligence" exercised by the following parenthetical: "(for reason certified mail returned by postmaster for attempt not known and unable to forward, local telephone directory, Warren/Youngstown Regional Telephone Book, Public records

through the Internet & Intranet[1]).” This explanation is completely generic and describes the efforts that would be made in any set of circumstances to demonstrate reasonable diligence[2]. There is nothing in the affidavit that enlightens or applies to the facts and circumstances of this particular case – no addresses, names, specific public records, or anything about how the internet (and intranet) were utilized to identify persons who might have an interest in the subject property.

{¶28} On appeal, Zeena argues that a simple internet search of Leslie C. Webb's name produces his obituary and next of kin. Of course, there is no evidence to substantiate her claim nor could there be in the absence of a hearing on the issue. The law disfavors default judgments and service by publication (in 2025 to say the least) is admittedly the last resort. Given these facts and the nature of the underlying issue (the forfeiture of property rights), the interests of justice strongly favor having Lamancusa substantiate his claims that reasonable diligence was exercised. The trial court should have granted Zeena's motion and, at the least, set the matter for hearing. *Patrick*, 2020-Ohio-3312, at ¶ 25 (12th Dist.) (where publication failed to provide actual notice, “this matter must be reversed and remanded to the trial court to conduct a hearing to determine if the Brown County Treasurer exercised reasonable diligence in identifying Wanda's unknown heirs and ascertaining their residences”).

{¶29} We further note that, in denying the Motion to Vacate, the trial court stated that “[t]he estate of Leslie C. Webb was a necessary party in the foreclosure action” and “[t]hey were, in fact, listed and served.” Recognizing the discrepancy, Zeena correctly

---

1. At oral argument it was explained that “Intranet” refers to the prosecutor's “interoffice” database, excluding Google and other public records.
2. It is difficult to imagine how consulting telephone directories could reasonably be expected to inform one whether Webb was living and, if he was not, who the beneficiaries would be.

Case No. 2024-T-0080

argues on appeal that "the estate cannot be properly served unless the fiduciary who has been duly appointed is served." The court's ruling that Webb's non-existent estate was not only a necessary party but properly served is also error. *Baker v. McKnight*, 4 Ohio St.3d 125, 127 (1983) ("[i]t is accepted law that an action may only be brought against a party who actually or legally exists") (citation omitted). An estate that does not exist cannot be served, and a necessary, non-existing estate cannot be served unless it is first duly created and opened. *Perry v. Eagle-Picher Indus., Inc.*, 52 Ohio St.3d 168, 173 (1990) ("[i]f a decedent's personal representative has not been substituted for the decedent, the end result is a lawsuit with only one party"). Accordingly, Zeena properly urged the creation of an estate for Leslie C. Webb as part of the relief in the Motion to Vacate.

{¶30} The dissenting opinion disputes the necessity of creating an estate for Webb (as well as actually serving his spouse, heirs, or next of kin) on the grounds that a tax foreclosure case is an *in rem* proceeding. The dissenting opinion relies on authority for the proposition that, when the complaint does not seek a money judgment against the decedent, the only necessary parties are the persons with an interest in the property. *Infra* at ¶ 58, citing *Chaco Credit Union*, 2012-Ohio 1123, ¶ 12 (12th Dist.).

{¶31} In a typical mortgage case, the dissenting opinion's position might be valid in that the interest of any beneficiaries of the estate would be protected. *See* R.C. 5721.20 ("any residue of moneys from the sale or foreclosure of lands … unclaimed by such owner within sixty days from its receipt, shall be paid into the county treasury" and "[t]he treasurer shall retain such excess in the treasury for the proper owner of such lands upon which the foreclosure was had, and upon demand by such owner, within three years

Case No. 2024-T-0080

from the date of receipt"). Here, however, the significant excess equity was not held for the beneficiaries as ordinarily would happen in an *in rem* proceeding. Instead, the full value of the unbid upon property was forfeit to the land bank, without any provision for the owners or heirs to the excess equity. In the present case, therefore, reliance on the *in rem* nature of the proceedings is neither valid nor just. Because the present proceedings actually extinguished whatever interest the potential beneficiaries of the estate would have had, an estate should have been created.

{¶32} The first two assignments of error are with merit.

### Third Assignment of Error: Zeena Raises a Legitimate Issue as to Whether the Transfer of the Property to the Land Bank Constitutes an Unconstitutional Taking

{¶33} In the third assignment of error, Zeena argues that "the government should not be allowed to unilaterally transfer property owned by an estate to the land bank without any compensation received by the estate." Given the disposition of the first two assignments of error, this issue is not appropriate for review at the present time[3]. However, the question of whether the transfer of property to the land bank in circumstances such as the present ones is legitimately asked and merits comment.

{¶34} There have been several significant federal cases in recent years addressing the constitutional implications of land bank programs in the context of the takings clause. In *Tyler v. Hennepin Cty., Minnesota*, 598 U.S. 631 (2023), a taxpayer brought suit against the county government after the county had forced the sale of her

---

3. The dissenting opinion agrees that this issue is not ripe for review, but believes that any discussion of it is "advisory and inappropriate" given its "hypothetical nature." On the contrary, while the service issue is dispositive of the appeal, it is a fact that, at present, Zeena's interest and that of any other potential beneficiaries of Webb's estate in the subject property is forfeit. If she ultimately succeeds in vacating the underlying foreclosure a section 1983 becomes unnecessary. Certainly, it makes more sense to avoid the harm (the forfeiture) rather than have to repair it (by a section 1983 action).

Case No. 2024-T-0080

condominium to satisfy an outstanding property tax bill. The property sold for an amount in excess of the tax liability and the county retained the full proceeds of the sale which, under state law, it was entitled to do. The question before the United States Supreme Court was "whether that remaining value [the surplus equity] is property under the Takings Clause, protected from uncompensated appropriation by the State." *Id.* at 638. A unanimous court recognized that property "taxes are not themselves a taking," and that the states "may impose interest and late fees" as well as "seize and sell property, including land, to recover the amount owed." *Id.* at 637-638. However, the United States Supreme Court ruled that the states did not have any right to retain amounts in excess of what was owed:

> The County had the power to sell [the taxpayer's] home to recover the unpaid property taxes. But it could not use the toehold of the tax debt to confiscate more property than was due. ***By doing so, it effected a 'classic taking in which the government directly appropriates private property for its own use.'*** *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 324, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (internal quotation marks and alteration omitted). [The taxpayer] has stated a claim under the Takings Clause and is entitled to just compensation.

(Emphasis added.) *Id.* at 639.

{¶35} The Sixth Circuit in *Harrison v. Montgomery Cty., Ohio*, 997 F.3d 643 (6th Cir.), reached a similar conclusion in a case, like the present one, involving the transfer of property to the county land reutilization corporation or land bank. The plaintiff owned an interest in property belonging to a deceased relative. The property was foreclosed for unpaid property taxes and transferred to the land bank although the fair market value of the property exceeded the tax liability. The plaintiff filed a section 1983 action in federal court "alleging that the County violated the federal and state takings clauses by

Case No. 2024-T-0080

extinguishing her surplus equity interest without providing just compensation." *Id.* at 647; *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 194 (2019) ("someone whose property has been taken by a local government has a claim under § 1983 for a 'deprivation of [a] right[ ] ... secured by the Constitution' that he may bring upon the taking in federal court"). The suit was dismissed, inter alia, under the Tax Injunction Act which prohibits federal courts from interfering with the assessment, levy or collection of taxes under state law. The Sixth Circuit determined that the suit did not interfere with the exercise of Ohio's taxing power:

> [The plaintiff] does not challenge Ohio's 'collection' of delinquent taxes. 28 U.S.C. § 1341. She does not seek to halt foreclosures of tax-delinquent property or even to get her home back. [She] challenges only Ohio's seizure of surplus equity, an amount in excess of taxes owed. Because Ohio's seizure and extinguishment of surplus equity is not an 'act of obtaining payment of taxes due,' [*Direct Marketing Assn. v.*] *Brohl*, 575 U.S. [1,] 10, 135 S.Ct. 1124 [2016], the Act does not bar [the plaintiff's] claims.

*Id.* at 651-652.

{¶36} The *Tyler* and *Harrison* cases clearly establish that Zeena's claim that the transfer of her father's property to the county land bank without compensation constitutes an unconstitutional taking is viable. *Knick* at 189 ("[i]f a local government takes private property without paying for it, that government has violated the Fifth Amendment—just as the Takings Clause says—without regard to subsequent state court proceedings"). In the present case, the property was transferred to the Trumbull County Land Reutilization Corporation pursuant to R.C. 5722.03(D) which provides: "If any nonproductive land selected by an electing subdivision is advertised and offered for sale at one sale pursuant to this section but is not sold for want of a minimum bid, the electing subdivision that selected the nonproductive land shall be deemed to have submitted the winning bid at

such sale, and the land is deemed sold to the electing subdivision for *no consideration* other than the amounts charged [for fees and costs] under divisions (E) and (F) of this section." (Emphasis added.) The statute itself provides for local government to take private property without paying for it – according to Chief Justice Roberts, "a classic taking." *Tyler*, 598 U.S. at 639.

{¶37} Programs such as Ohio's land bank program have been strongly denounced as "home equity theft": "Equity is a protected property interest. State counties cannot be permitted to simply forego a property sale and extinguish the homeowner's surplus equity by transferring the property to a land bank. The Sixth Circuit's persuasive reasoning in *Harrison* is an appropriate model for other federal courts to provide a clear path for property owners to recover their confiscated surplus equity." Black, *Taking the American Dream - A Remedy for Home Equity Theft Following the Sixth Circuit's Ruling in* Harrison v. Montgomery County, Ohio, 91 U.Cin.L.Rev. 829, 855 (2023). There is even a website dedicated to challenging such laws. *See* homeequitytheft.org. One need not agree with such a characterization of land bank laws to appreciate the potential for their abuse. Taking the present case for example, the decedent Webb's property was auctioned with a minimum bid amount of $120,000, representing two-thirds of the fair market value of the property. Ostensibly, as conceded by Lamancusa at oral argument, the minimum bid amount is required to protect the equity in the property. However, when no bids were received, the whole of the property was forfeit despite the actual tax liability being far below the statutorily mandated minimum bid. When coupled with the fact that

service was effected by recourse to ineffectual service by publication, the justice of Zeena's complaint is manifest[4].

{¶38} The third assignment of error is without merit.

{¶39} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, denying Zeena's Motion to Vacate Judgment is reversed and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against the appellee.

MATT LYNCH, P.J., concurs,

ROBERT J. PATTON, J., dissents with a Dissenting Opinion.

_____

ROBERT J. PATTON, J., dissents with a Dissenting Opinion.

{¶40} I respectfully dissent from the majority's disposition of Zeena's appeal and would affirm the judgment of the Trumbull County Court of Common Pleas.

{¶41} In the court below, nearly 19 months after the confirmation of sale of real property located at 8700 Delin Thomas Road, Kinsman, OH 44428 (the "Property"), Zeena sought to vacate the decree of foreclosure and confirmation of sale on the grounds of improper service and an alleged unconstitutional taking. Zeena's motion alleged three grounds for relief: 1) judgment was improper against Leslie C. Webb ("decedent")

---

4. We note that House Bill 315, effective April 3, 2025, essentially prevents the forfeiture of home equity as has occurred in the present case by requiring that "the excess proceeds [from the sale of property by a land reutilization corporation] shall be treated in the same manner as surplus funds under section 5721.20 of the Revised Code." R.C. 323.78(D)(2).

Case No. 2024-T-0080

because he was deceased; 2) the transfer of the Property to the Trumbull County Land Bank ("Land Bank") where the value of the Property exceeded the tax debt amounted to an unconstitutional taking; and 3) service by publication was not sufficient against out-of-state next of kin.

### Zeena Failed to Argue Sufficiency of the Affidavit

{¶42} Conspicuously absent from Zeena's motion was any claim that the affidavit filed in support of the Treasurer's motion for service by publication was insufficient. Generally, appellate courts will not consider, on appeal, issues not presented to the trial court. *Washington Mut. Bank v. Cowles*, 2007-Ohio-4771, ¶ 36 (11th Dist.), citing *Brown v. Gabram,* 2005-Ohio-6416, ¶ 22 (11th Dist.). Indeed, this court's review is limited to the issues *actually raised and litigated* in the trial court.

{¶43} Zeena argued, in a single sentence, in her motion to vacate in the trial court, that service by publication "would not have been sufficient being out of state." As Zeena failed to raise the sufficiency of the affidavit in her motion in the court below, that issue is not properly before this court. *Natl. City Bank v. Brousil*, 2002-Ohio-6578, ¶ 28 (11th Dist.) (fraud and promissory estoppel were not raised in the Civ.R. 60(B) motion made at the trial court level and as a result, were not properly before the court and were considered waived by appellants). *See Stores Realty Co. v. City of Cleveland*, *Bd. of Bldg. Stds. and Bldg. Appeals*, 41 Ohio St.2d, 41, 43 (1975) ("errors which arise during the course of a trial, which are not brought to the attention of the trial court by objection or otherwise, are waived and may not be raised upon appeal"). The majority ignores this well-established principle. Instead, the majority concludes that the trial court erred when it denied Zeena's motion to vacate and failed to require the Treasurer to demonstrate the exercise of

Case No. 2024-T-0080

reasonable diligence in discovering the identity of the unknown heirs. The majority's position would be accurate had Zeena raised an issue with the sufficiency of the affidavit and argued that the Treasurer did not exercise reasonable diligence in ascertaining the name or location of the decedent's next of kin. Zeena did not raise either issue in the court below, thus the trial court did not address it. Neither should we.

{¶44} The majority ignores the application of the doctrine of waiver through repeated accusations that: "the dissent would have Zeena forfeit her right to challenge the underlying judgment . . . "; "[t]he dissent would further deny Zeena relief on the grounds . . . "; and "[t]he dissent, however would treat this rebuttable presumption as conclusive with respect to sufficiency of service and so deny Zeena the opportunity of challenging service." Majority opinion, ¶ 21-22. This dissent is rooted in the time-honored appellate principle embodied in the doctrine of waiver that requires a litigant to first raise an argument to a trial court, thereby giving a trial judge an opportunity to consider and make a ruling, before appellate review. In doing so, the majority not only ignores well-established appellate principles, but this court's own precedent. *Dolan v. Dolan*, 2002-Ohio-2440, ¶ 7 (11th Dist.), citing *Stores Realty Co.*, 41 Ohio St.2d, 41, 43 (1975). *See Cawley JV, L.L.C. v. Wall St. Recycling, L.L.C.*, 2015-Ohio-1846, ¶ 17 (8th Dist.).

{¶45} Even if we disregard this well-established appellate principle, which the majority chooses to do, I would conclude that the affidavit presented by the Treasurer detailed the steps taken to ascertain the addresses and that such steps were sufficient to obtain service by publication, absent any argument to the contrary in the court below.

## Service by Publication Was Proper

{¶46} Before requesting service by publication, a plaintiff must exercise reasonable diligence, which can be established when the plaintiff "tak[es] steps which an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address." *Sizemore v. Smith,* 6 Ohio St.3d 330, 332 (1983); *accord In re Thompkins*, 2007-Ohio-5238, ¶ 25-26. The Supreme Court of Ohio did not establish a mandatory checklist, but concluded that counsel must use common and readily available sources when looking for the defendant's residence. *Thompkins* at ¶ 26; *Sizemore* at 332. A plaintiff is required to conduct a reasonably diligent search, not an exhaustive search. *See Hein Bros. v. Reynolds*, 2021-Ohio-4633, ¶ 92 (7th Dist.). The determination regarding whether a plaintiff exercised reasonable diligence will be based on the individual facts of each case. *Sizemore* at 332. In sum, Ohio law requires reasonable diligence in a search for locating and naming defendants rather than extraordinary efforts.

{¶47} In a factually similar case, the Twelfth District Court of Appeals concluded that "[a] conclusory averment in an affidavit that a party's name and residence cannot be ascertained is inadequate to rebut a challenge to the propriety of service by publication." *Patrick v. Ellman*, 2020-Ohio-3312, ¶ 18 (12th Dist.), citing *Sizemore* at 332; *In re Adoption of Goldberg*, 2001 WL 1079032, *3 (12th Dist. Sept. 17, 2001). The court of appeals explained that:

> [S]ervice by publication may be utilized as a last resort in circumstances where no other method of service is likely to provide actual notice of pending litigation. So, where the identity and residence of a party are discoverable through reasonable diligence, service of process by means of publication violates procedural due process. It is the party requesting service who must demonstrate that service by publication is proper.

Case No. 2024-T-0080

*Id.* Accordingly, service by publication is the final option when all other avenues for service have been exhausted.

{¶48} Notably, the Twelfth District did not find the judgment to be void. Instead, the court of appeals remanded the matter to the trial court "to conduct a hearing to determine if the Brown County Treasurer exercised reasonable diligence in identifying [the decedent]'s unknown heirs and ascertaining their residences." *Ellman* at ¶ 25. The court of appeals noted that the Brown County Treasurer's assertion in the appellate brief "that it had sought to identify Wanda's unknown heirs by 'searching the probate court' and 'the internet for an obituary'" was "not supported by the record." *Id*. at ¶ 23.

> "Nowhere in the record is there evidence of the efforts undertaken to identify Wanda's unknown heirs as a prerequisite to serving them with the summons and complaint by publication. Therefore, given this lack of evidence, the trial court's decision finding the Brown County Treasurer 'complied with the statutory and civil rules concerning service by publication' is not supported by the record. The trial court abused its discretion in so finding."

*Id.* In the case sub judice, the affidavit submitted with the Treasurer's motion for service by publication contained more than a conclusory averment that a party's name and residence could not be ascertained. The affidavit filed on March 21, 2022, provided that "for reason certified mail returned by postmaster for attempt not known and unable to forward, local telephone directory, Warren/Youngstown Regional Telephone Book, Public records through the Internet & Intranet," the usual place of residence for decedent and unknown spouse, heirs, next of kin and administrators of decedent's estate could not be ascertained. The affidavit established that the Treasurer used common and readily available sources, including the internet, to attempt to identify an address. As the affidavit

included these specific steps taken by the Treasurer, the affidavit necessarily meets the criteria of Civ.R. 4.4 which requires "all of the efforts" be contained in the affidavit.

{¶49} "A sufficient averment in the affidavit for publication filed under Civ.R. 4.4(A) 'gives rise to a rebuttable presumption that reasonable diligence was exercised.'" *Ellman*, 2021-Ohio-4354, at ¶ 21 (12th Dist.), quoting *Sizemore*, 6 Ohio St.3d 330, 331 (1983), citing *Am. Tax Funding, L.L.C. v. Robertson Sandusky Properties*, 2014-Ohio-5831, ¶ 28 (7th Dist.). "When '*challenged*' by the defendant, the plaintiff must 'support the fact that he or she used reasonable diligence.'" (Emphasis added). *Id*. quoting *Sizemore* at 332; *Am. Tax Funding* at ¶ 28. Once challenged, "a defendant may then 'bring in independent evidence to contradict the reasonable diligence of the plaintiff's search[.]'" *Id.*, quoting *Brooks v. Rollins*, 9 Ohio St.3d 8, 9 (1984).

{¶50} Lamancusa, as Trumbull County Treasurer, was required to conduct a reasonably diligent search, not an exhaustive search. The affidavit presented by the Treasurer detailed the efforts undertaken, which gave rise to a rebuttable presumption that the Treasurer exercised reasonable diligence in attempting to ascertain he addresses of the unknown heirs. Zeena did not challenge the affidavit or the rebuttable presumption that reasonable diligence was exercised and therefore such claim is now waived. *See Franks v. Reynolds*, 2021-Ohio-3257, ¶ 66 (7th Dist.) ("finding that appellants waived a claim regarding the staleness of diligence of a search conducted by failing to raise the claim in the trial court, and declining to find plain error"); *see also In re D.S.*, 2009-Ohio-3167, ¶ 18 (9th Dist.) ("Because Mother failed to challenge service in the trial court, she failed to rebut the presumption that CSB had used reasonable diligence to locate Mother at her current address. Service by publication was therefore valid.").

Case No. 2024-T-0080

{¶51} Indeed, Zeena only argued that service by publication was improper as to out-of-state next of kin. This single statement falls short of making a credible challenge to the averments made by the Treasurer in support of the request for service by publication. A plain reading of Civ.R. 4.4 indicates the rule applies where the residence is not known. Only if the residence is known and the party is not a resident of Ohio does the court look to Civ.R. 4.3(B). Therefore, service by publication is permissible and proper when the residence is unknown, whether that residence is somewhere in Ohio or in another state.

{¶52} Further, "foreclosure proceedings constituting an action in rem may be commenced by the filing of a complaint after the end of the second year from the date on which the delinquency was first certified by the auditor." R.C. 5721.18(B). That subsection further requires that the prosecuting attorney cause a title search to be conducted for the purpose of identifying any lienholders or other persons with interests in the property subject to foreclosure, prior to filing such an action in rem.

{¶53} Additionally, R.C. 5721.18(B) provides:

> After the final newspaper publication, the publisher shall file with the clerk of the court an affidavit stating the fact of the publication and including a copy of the notice of foreclosure as published. Two weeks after the clerk causes the notice to be published on the selected web site, if proceeding under division (B)(1)(b) of this section, the prosecuting attorney shall file with the clerk an affidavit stating the fact of the publication and including a copy of the notice of foreclosure and forfeiture as published. Service of process for purposes of the action in rem shall be considered as complete on the date of the third newspaper publication or the date that is two weeks after the clerk causes the notice to be published on the selected web site, as applicable.

Therefore, the claim that Zeena "neither received the complaint nor the decree of foreclosure" does little to support the majority's position the Zeena was denied an opportunity to assert her claims. It is undisputed that Zeena did not receive either the

Case No. 2024-T-0080

complaint or the decree to her mailbox. Instead, Zeena was served with the complaint by way of publication and service was completed at the expiration of three weeks after the date of the first publication.

{¶54} Accordingly, the question before the court is not whether Zeena was served, but whether service by publication was proper. Contrary to the majority's position, upon filing her motion to vacate, Zeena had the opportunity to challenge the sufficiency of the affidavit and rebut the presumption of reasonable diligence exercised by the Treasurer. However, she did not do so in her motion.

{¶55} While the majority takes issue with the "generic" nature of the affidavit, any alleged inadequacies of the affidavit should have been raised by Zeena in the court below. Zeena was required to actually challenge the sufficiency of the affidavit to warrant a hearing in this case. *See Corrao v. Bennett*, 2020-Ohio-2822, ¶ 23 (8th Dist.) (finding that the trial court properly denied the motion to vacate default judgment without conducting an evidentiary hearing because there were no operative facts warranting relief regarding the efforts utilized to ascertain the address of defendant). The Treasurer's affidavit was sufficient to establish a rebuttable presumption that reasonable diligence was exercised. As Zeena did not challenge the presumption, I would conclude that the trial court did not err or abuse its discretion in denying Zeena's motion to vacate without affording her a hearing as there was no legal requirement to do so based on the claims actually raised in Zeena's motion.

## Decedent's Estate Was Not a Necessary Party

{¶56} Zeena asserted, in support of her motion to vacate, that the complaint could not name the decedent as a defendant because he was deceased. Zeena also

Case No. 2024-T-0080

suggested, without any legal authority, that the Treasurer was required to initiate the probate process when it sought to foreclose on the Property of a deceased individual where an estate had not yet been opened.

{¶57}  It is undisputed that Leslie C. Webb died in September 2017, over four years before the filing of the tax foreclosure complaint.  Generally, a decedent cannot be a party to an action because a party must actually or legally exist. *Baker v. McKnight*, 4 Ohio St.3d 125, 127 (1983).  *See Chaco Credit Union, Inc. v. Perry*, 2012-Ohio-1123, ¶ 12 (12th Dist.). Zeena alleged that in order for the trial court to foreclose on the Property, the Treasurer was required to serve the fiduciary of Webb's estate. Zeena cited *Lake Ski I-80 v. Habowski*, 2015-Ohio-5535 (11th Dist.), in support of her position. *Habowski* is inapplicable to the case at bar. In *Habowski*, this court determined that the trial court lacked jurisdiction to enter judgment against a deceased property owner prior to the substitution of the administrator of the owner's estate. The complaint in *Habowski* did not name any other defendant in the case, wherein Lake Ski I-80 sought to collect damages from Habowski in the amount of $62,500. *Id*. at ¶ 6. *Habowski* is distinguishable from the case sub judice. Here, the Treasurer filed the foreclosure action naming the decedent *and* his unknown heirs and did not seek to collect damages from the decedent.

{¶58}  This is a tax foreclosure case and an in rem proceeding. R.C. 5721.18(B).

> [T]axes on real estate are not an estate debt, "[a] proceeding to foreclose a tax lien * * * is essentially one in rem and not in personam; it operates on the land itself and not on the title of the one in whose name the property is listed for taxation." *Hunter v. Grier* (1962), 173 Ohio St. 158, 161, 180 N.E.2d 603 (citations omitted). This is because "a proceeding to foreclose a tax lien on property materializes only when the nonpayment of taxes has extended over a period of years." *Id.* at 162, 180 N.E.2d 603. Since such proceedings "are not * * * proceedings against parties," but rather "have regard to the land itself[,] * * * [any time] the owners are named

Case No. 2024-T-0080

> in the proceedings and personal notice is provided * * * [it is done] rather from tenderness to their interests * * * than from any necessity * * *." *Id.* at 161-162, 180 N.E.2d 603 (citation omitted).

*Long v. Long*, 2007-Ohio-5909, ¶ 38 (11th Dist.). Therefore, where no estate has been opened, the naming of the unknown heirs and devisees of the decedent is sufficient in a foreclosure case. *CapitalSource Bank v. Hnatiuk*, 2016-Ohio-3450, ¶ 32 (8th Dist.), citing *BAC Home Loans Servicing, L.P. v. Komorowski*, 2012-Ohio-1341, ¶ 16 (8th Dist.); *see CitiMortgage, Inc. v. Bumphus*, 2011-Ohio-4858, ¶ 25 (6th Dist.). Notice to unknown heirs is all that is required when a foreclosure action is one in rem and an unopened estate is not a necessary party. *Chaco Credit Union, Inc.* at ¶ 12.

{¶59} In *Chaco Credit Union, Inc.,* the credit union filed a complaint in foreclosure against Mary Ellen Perry. Perry had died four months prior to the filing of the complaint and no estate was opened following her death. *Id.* at ¶ 2-3. The complaint named Perry along with her daughter, Tonya Payne, and Perry's "[u]nknown heirs, legatees, devisees, executors, executrixes, administrators, administratrixes, and assignees." *Id.* at ¶ 4. Payne filed a motion to dismiss in the trial court and asserted that the foreclosure action was a nullity because the action was brought against a deceased person instead of Perry's unopened estate. *Id.* at ¶ 11. Perry's motion was denied and she appealed.

{¶60} The Twelfth District Court of Appeals explained that "'[a] mortgagee is not required to make a deceased mortgagor's estate a party unless it seeks to hold the estate liable for the debt.' *Ohio Sav. Bank v. Virden*, 9th Dist. App. No. 17885, 1997 WL 89222, *2 (Feb. 26, 1997), citing *McMahon v. Davis*, 10 Ohio C.D. 467, 1899 WL 698, *3 (1899). In other words, '[i]t is only when the mortgagee seeks a money judgment that the estate must be made a party to the action.' *CitiMortgage, Inc. v. Bumphus*, 6th Dist. No. E–10–

066, 2011–Ohio–4858, ¶ 25." *Chaco Credit Union Inc.* at ¶ 12. Because Chaco Credit Union was not seeking to hold either the deceased party or their estate liable for a debt, the Twelfth District Court of Appeals concluded that "the only necessary parties to the foreclosure action were Perry's 'heirs, devisees, grantees, or assignee[s], for these are the only persons interested in the equity that is to be foreclosed.'" *Id.* at ¶ 14, citing *Ohio Sav. Bank v. Virden*, 1997 WL 89222, *2 (9th Dist. Feb. 26, 1997); *see CitiMortgage, Inc. v. Bumphus*, 2011-Ohio-4858, ¶ 26–27 (6th Dist.); *Rinehart v. Wilkes*, 1985 WL 10297, *2 (10th Dist. May 23, 1985).

{¶61} Similarly, in the case sub judice, the Treasurer was not seeking to hold the decedent or his estate liable for a debt. The complaint in foreclosure named the decedent's unknown heirs, which according to Zeena, included her. As no estate was opened in this case, the Treasurer named the appropriate parties to the underlying foreclosure action. The tax foreclosure case is an in rem proceeding which operates on the land itself. The trial court clearly had jurisdiction over the action because the Property was located in Trumbull County, Ohio. There is no statutory or legal obligation that the Treasurer open an estate for a deceased land owner prior to pursuing a tax foreclosure.

{¶62} Accordingly, the trial court properly concluded that the naming of the decedent's unknown heirs was sufficient in this case. It is inconsequential that the trial court stated decedent's "estate" was served as all necessary parties to the underlying action were named in the complaint.

**Takings Claim Is Not Grounds for a Motion to Vacate**

{¶63} A property owner's takings claim becomes ripe when the property is transferred and where there is a retention of excess funds, or in this case, excess equity.

Case No. 2024-T-0080

While the majority posits that Zeena's unconstitutional takings claim is viable, the majority ignores a crucial point. A takings claim, by its very nature, does not arise until the sale or transfer of property and funds in excess of the amount owed are retained. Therefore, an unconstitutional taking should be raised in a separate claim in a separate action. It cannot serve as the basis for a motion to vacate an otherwise procedurally sound and proper foreclosure case.

{¶64} "A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019). A takings claim may arise in the context of a tax foreclosure case when the proceeds of the sale exceed the amount owed in taxes or where there is a loss in equity due to the seizure of the property by the government. In other words, a property owner's takings claim becomes ripe when the property is transferred and there is a retention of excess funds or excess equity. *See Harrison v. Montgomery Cnty.*, 997 F.3d 643 (6th Cir. 2021) (no taking occurred until it became clear the State would seize plaintiff's surplus equity by transferring title when the foreclosure was adjudicated).

{¶65} Zeena's alleged takings claim would have become ripe at the point of the confirmation of sale transferring the Property to the Land Bank and should have been raised in a direct appeal. *See State ex rel. US Bank Trust, Natl. Assn. v. Trumbull Cty., Bd. of Commrs.*, 2022-Ohio-1817, ¶ 20 (11th Dist.). Zeena did not appeal from the confirmation of sale. A Civ.R. 60(B) motion is not a substitute for a direct appeal under these circumstances. Moreover, it is not grounds for a motion to vacate an otherwise valid in rem tax foreclosure proceeding.

{¶66} Due to the hypothetical nature of Zeena's purported takings claim, the majority's discussion on this issue is advisory and inappropriate. While a set of facts may exist which would allow Zeena to pursue a takings claim, assuming she could establish standing to bring the claim, those facts are not present in this case, on this record, from a judgment entry denying a motion to vacate, and the question was not "legitimately asked." Avenues exist to prosecute a takings claim, but the avenue is not this appeal.

{¶67} The cases cited by the majority involve property owners raising *federal* takings claims in accordance with 42 U.S.C. 1983, or in actions *separate* from the underlying foreclosure action. *See Harrison v. Montgomery Cty., Ohio,* 997 F.3d 643 (6th Cir. 2021). *See also Tyler v. Hennepin Cty., Minnesota,* 598 U.S. 631, 635 (2023) (a state court suit which was removed to federal court). None of these cases support or even suggest that a takings claim is grounds for relief pursuant to Civ.R. 60. Moreover, both cases involve factually different scenarios.

{¶68} In *Tyler*, the owner of a condominium filed a takings claim where state law provided no means for the disbursement of surplus funds to the property owner after a foreclosure sale. *Tyler* at 644. The action was removed from state court. *Tyler* is both factually distinguishable and inapplicable. In the instant case, there was no sale, thus no excess proceeds to disburse. Further, unlike in Minnesota's statutory framework, Ohio statutes provide for the disbursement of surplus funds after a foreclosure sale.

{¶69} In *Harrison,* the plaintiff alleged a *federal* takings claim on behalf of herself and others similarly situated. Harrison argued an unconstitutional taking and loss in equity after the county board of revision foreclosed on the property in accordance with R.C. 323.65. The United States Court of Appeals for the Sixth Circuit noted "the one option the

landowner does not have under the statute is to obtain any excess equity in the property after it goes to the land bank. The Ohio statute offers no way to capture that property interest." *Harrison* at 647. While procedurally different, there are some parallels that can be drawn between the process outlined in *Harrison* and the process employed in this tax foreclosure action. However, the Sixth Circuit aptly recognized that the route Ohio offers to property owners for bringing state law takings claims is a writ of mandamus to compel the county to pay compensation. *Id.* Neither *Tyler* nor *Harrison* stand for the proposition that such a claim can be used as a mechanism to vacate an otherwise proper foreclosure action years after a property was transferred to the Land Bank.

{¶70} While the majority may feel inclined to address the potential for abuse by county governments by utilizing a land bank to commit "home equity theft," such abuse has not been raised or even suggested in this case.[5] Despite how tempting it may be to postulate the fairness or lack of fairness in these cases, Zeena's claim should be raised in federal court or in a mandamus action, and it is not appropriately before this court, in this appeal, on the denial of a motion to vacate a tax foreclosure.

{¶71} It is this writer's position that the trial court appropriately denied Zeena's belated and unfounded motion to vacate without a hearing. The majority disregards proper appellate procedure in favor of advancing arguments Zeena failed to raise in the trial court to find error where there is none. Accordingly, I would affirm the trial court's

---

5. The majority recognizes in a footnote that the legislature recently passed House Bill 315, which amended R.C. 323.78 to include a provision to account for any excess proceeds after a foreclosure sale in tax foreclosure cases that result in the transfer of the property to the Land Bank. While this provision recognizes an avenue for relief in cases where the property's value exceeds the tax obligation, it does not support Zeena's assertion that the mere possibility of excess proceeds provides her with sufficient grounds to vacate the judgment in foreclosure.

Case No. 2024-T-0080

denial of Zeena's motion to vacate, maintain the procedural integrity of civil tax foreclosure cases, and limit appellate review only to issues properly raised.

{¶72} Based on the foregoing, I respectfully dissent.

Case No. 2024-T-0080

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the first two assignments of error are with merit and the third is without merit. The order of this court is that the judgment of the Trumbull County Court of Common Pleas is reversed and this matter is remanded for further proceedings consistent with this Opinion.

Costs to be taxed against appellee.

_____
JUDGE SCOTT LYNCH


_____
PRESIDING JUDGE MATT LYNCH,
concurs


_____
JUDGE ROBERT J. PATTON,
dissents with a Dissenting Opinion

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2024-T-0080